Jones, J.
(concurring). I agree that there should be an affirmance. Although I concur in the result, I would rely on an analysis different from that of the courts below. In sum, in my view neither the evidentiary privilege against disclosure of confidential communications between client and attorney nor the ethical injunction against such revelations has any application in this case. The issue here falls into a different category of legal reference.
A uniform line of cases has recognized the right of the courts in pending litigation to direct an attorney representing one of the parties to that litigation to reveal his client’s address. (E.g., Markevich v Royal Ins. Co., 162 App Div 640, 641 ["The professional privilege of the attorney cannot avail against giving the address of his client”]; Matter of Trainor, 146 App Div 117, 119 ["the court has the right during the pendency of the action to direct the plaintiff’s attorney to disclose the client’s address, while the relation of attorney and client actually exists”]; Richards v Richards, 64 Misc 285; Post v Scheider, 13 NYS 396; Corbett v De Comeau, 13 Jones & Sp 637; 99 Plaintiffs v Vanderbilt, 4 Duer 632.)
The principle behind the holdings in these cases is now reflected in the provisions of the Civil Practice Law and Rules. CPLR 3118 provides in pertinent part: "A party may serve on any party a written notice demanding a verified statement setting forth the post office address and residence of the party * * * The demand shall be complied with within ten days of its service.”* In the event of failure to respond to such a *224 demand, application may be made to the court to compel disclosure (CPLR 3124). Thereafter sanctions for refusal to obey the court’s order are directed against the party (CPLR 3126). In this case, as noted at the Appellate Division, there is also an explicit provision of the Surrogate’s Court Procedure Act which requires a fiduciary, here the guardian, to keep the court informed of changes of address (SCPA 708, subd 1).
The determinative consideration is the obligation of any party to a litigation, for the benefit of the court in which that litigation is pending, as well as for the benefit of the other parties thereto, to keep the court and the parties informed as to his address. This obligation is unrelated to the substantive issues raised in the litigation. As a matter of evident practicality, if the objective of the litigation is to be achieved, the dispute between the parties resolved, and the adjudication of the court enforced, it is necessary to know how the parties may be located.
In my analysis, therefore, inasmuch as a party may be compelled to disclose his address to facilitate the conduct of the litigation in which he is involved, there would appear to be no reason why the representative and agent of that party in the same litigation, with no independent personal interest in the matter, should not likewise be directed to disclose the address if it is known to him. And this is what the cases cited above have recognized.
The obligation to disclose the address exists entirely without regard to the existence of any evidentiary privilege under CPLR 4503 (subd [a]). The data sought — the address of one of the parties to the pending judicial proceeding — does not properly come within the classification of evidence, nor does it have any of the characteristics of evidentiary proof. Thus, it has no relevance to the fact-finding aspect of the litigation; it will not in any way affect the determination on the merits of the controversy between the litigants. In this instance the legal contest with respect to the right to the custody of Jacqueline F. was resolved by the Surrogate’s decree of July 1, 1977, thereafter affirmed at the Appellate Division. The present proceedings are not directed to and have no bearing on the making of that determination. Indeed, it would be the most unusual case in which the address of a party would ever be relevant to the substantive issues in an action. The address is sought here only to facilitate enforcement of the court’s *225 order, a matter related only to the conduct of the final, remedial stage of the pending litigation.
Enforcement of a judgment against the losing party is however an integral, ancillary part of the litigation in chief and steps looking toward enforcement are regarded as a part of the litigation itself. Until enforcement has been effected the litigation has not concluded. Thus, the various procedures and tools provided by CPLR article 52 for collection of money judgments from unsuccessful litigants are not independent actions but are only adjuncts to, and bear the title of, the civil actions whose judgments they seek to effectuate (Siegel, General Commentary on Article 52 and Practice Commentaries to CPLR 5222, 5225, 5226, McKinney’s Cons Laws of NY, Book 7B, pp 45-46, 184, 242, 259). The remedy of punishment for civil contempt arising out of nonperformance of a judgment (CPLR 5104) or of noncompliance with a device in aid of enforcement of a money judgment (CPLR 5251) is obtained by the procedure applicable to a motion in the civil action from which the judgment emerged (Judiciary Law, § 756).
In this circumstance, I must reject the majority’s premise that the underlying custody proceeding in which appellant attorney represented Jacqueline’s aunt "terminated on December 19, 1977, when this court denied appellant’s client leave to appeal from the order of the Appellate Division affirming the Surrogate’s revocation of letters of guardianship” (p 221). The present application, in aid of enforcement of the final determination in the custody proceeding, was initiated by order to show cause in that proceeding. Relief of two sorts was sought: — first by way of punishment for contempt of the party (dismissed for failure to effect sufficient service on her), and second a direction to her attorney to disclose the client’s address. The particular relief can only be regarded as incidental to the custody proceeding. Even if it be taken, as urged by the majority, that the attorney-client privilege does not shelter the client’s communication, while that position would deny the attorney the right to refuse disclosure if he were directed to furnish the information, it provides no authority for the demand that he furnish the address in the first place. This is not an instance where an attorney on the witness stand refused to divulge the address under a claim of privilege and the authority for asking the question was associated with the right to interrogate the witness. In this instance, the direction was made by the court *226 addressed to the attorney, entirely properly, not as some new or independent proceeding but only as an aspect of the court’s responsibility to see to the enforcement of its determination in the custody proceeding. I characterize this as incident to the custody proceeding, which continues as pending litigation until enforcement is accomplished or efforts to that end are abandoned. Indeed, if it not be so characterized, the attempt to punish the client for contempt having been judicially terminated, wherein lies the procedural framework within which the attorney may be directed to disclose?
If, as I think, an attorney may be compelled on this analysis to disclose his client’s address to further the conduct of the judicial proceedings in ordinary litigation, how much more important and necessary it is when the issue in controversy is custody of a child. In such a case, in view of the special role and responsibility of the court to protect and advance the interests of the child, the court probably has a greater interest in enforcing prompt and full obedience to its directives than in any other class of case. (Cf. Tierney v Flower, 32 AD2d 392; Falkenhainer v Falkenhainer, 198 Misc 29.)
For the reasons stated, the order of the Appellate Division should be affirmed.

 As to the availability of this disclosure provision after trial see CPLR 3102 (subd [d]).