Chief Judge Desmond.
 

 By the order appealed from appellant, a lawyer, has been committed to jail (Civ. Prac. Act, § 406) until he shall tell respondent New York City Commissioner of Investigation the name of the client who gave appellant certain information wMch the latter turned over to the Commissioner. The facts are tersely stated in the Special Term opinion: “It appears that respondent is an attorney and represents United Fruit Buyers Association, Inc. The latter is an organization
 
 *217
 
 of merchants who buy fruit at a daily auction held in the neighborhood of Pier 38. It seems that the members had difficulty finding parking space for their automobiles and respondent made several attempts with many city departments to try to make arrangements for them. In the course of this effort one of the members of the association called respondent’s attention to the fact that large trailer trucks were parked for long periods illegally in the neighborhood for the purpose of transferring their products to smaller trucks and this could not he done without the connivance of some municipal authority. • In the course of his efforts respondent gave this information to various commissioners of city departments. Petitioner is conducting an investigation of certain waterfront conditions. In the course of it he learned about respondent’s statement. * ■* * In response to questions respondent revealed that the information about the trailer trucks came to him from a member of the association. This member agreed to go to a city official to find out whether anything could be done, and reported back to respondent that the trailer trucks had the support of two powerful politicians who had shared in the large return that resulted from the illegal parking and that nothing could be done. Further than that respondent knew nothing of the incident. Petitioner asked the name of the member and respondent refused to give it.” We have deleted the opinion’s concededly mistaken statement that the Commissioner “ subpoenaed ” appellant. More about this hereafter.
 

 After reciting the facts, Special Term rejected appellant’s argument that he was entitled to withhold the name because of the attorney-client privilege (Civ. Prac. Act, § 353). The court wrote: “Until there is a client, there is no attorney-client relationship. So in order to establish it, the name must be revealed. It follows that the privilege does not extend to the identity of the client
 
 (People ex rel. Vogelstein
 
 v.
 
 Warden of County Jail,
 
 150 Misc. 714, 717, affd. 242 App. Div. 611).” It appears, however, from the whole record and as found by Special Term itself in the opinion above quoted that the lawyer-client relation clearly did exist in this situation. The law question, then, is whether an attorney confidentially retained by a client to pass certain information to a public investigating body is to land in jail because he is willing to disclose the information
 
 *218
 
 but not Ms client’s identity. Imposition of a sanction so Draconian and so destructive of the ancient rules as to lawyer-client privilege calls for close security. We do not think it can be held valid.
 

 Justice Shientag’s brilliant and comprehensive opinion in Vogelstein’s ease
 
 (People ex rel. Vogelstein
 
 v.
 
 Warden of County Jail,
 
 150 Misc. 714, affd. 242 App. Div. 611) is cited as a holding that the privilege never extends to concealment of the client’s name. But the law and the sweep of that opimon are not that broad. The court in
 
 Vogelstein
 
 pointed out, as do all the authorities, not only that the fact of retention of counsel is ordinarily not confidential or privileged but that divulgenee of the alleged client’s identity is often necessary in order to determine whether the basic fact of attorney-client status really exists, so as to bring into play section 353 of the Civil Practice Act. Many decisions are cited in the
 
 Vogelstein
 
 opinion (and elsewhere, see Fisch, New York Evidence, § 521) to show that the great weight of authority in England and in this country is that the client’s identity does not come within the scope of the privilege. But there is a distinct cleavage of opinion in this State (see cases both ways cited by Fisch) and many exceptions, some of them for situations where giving out the client’s name would serve no necessary purpose but on the contrary would make public the very fact as to which the client desired and was entitled to secrecy. Usually, it is not the client’s name but the client’s communication to his lawyer which is held to be sacred, and so, ordinarily, there is no need to conceal the name to preserve the confidence. But here the client’s communication had already been divulged to the Commissioner and it was the client’s name that deserved and needed protection (see
 
 Elliott
 
 v.
 
 United States,
 
 23 D. C. App. 456;
 
 United States
 
 v.
 
 Lee,
 
 107 F. 702) for fear of reprisals, etc. Since there was no reason to doubt that the informant was a client of appellant, it was unnecessary to investigate that relationship. Since the client’s communication to appellant was made in the aid of a public purpose to expose wrongdoing and not, as in the
 
 Vogelstein
 
 case, to conceal wrongdoing, the seal of secrecy should cover the client’s name, so long as Ms information was made available to the public authorities. The contrary holding serves no right end, contravenes the ancient policy expressed in section 353,
 
 *219
 
 and embarrasses and penalizes a lawyer for taking a course consistent with his professional and civil responsibilities.
 

 The general rule is, or seems to be, that there should be disclosure of the name if the question of identity arises during the course of a litigation (see 1 Thornton, Attorneys, § 124, and see Wigmore’s remark in § 2313 of the 5th edition of his work on Evidence [Vol. 8, p. 608] that “ Every litigant is in justice entitled to know the identity of his opponent”). Other cases (like
 
 Vogelstein, supra)
 
 remove the veil from the client’s name when the attorney’s assertion of the privilege is a cover for co-operation in wrongdoing. But these are exceptions to the rule of confidentiality and since
 
 ‘ ‘
 
 much ought to depend on the circumstances of each case” (8 Wigmore,
 
 op. cit.,
 
 § 2313, p. 609) the present fact picture is surely a strong one for sticking to the rule, rather than making another exception.
 

 We should reverse on the ground indicated, and thus decide a law question of general public importance. There is, additionally, a narrower reason for the same result. Section 406 of the Civil Practice Act, pursuant to which this commitment was ordered, requires in terms that the witness must have been served with a subpoena to warrant requiring him to attend. No subpoena or warrant was ever served on appellant, who appeared (as is now conceded) before the Commissioner on the latter’s invitation. Respondent argues that appellant’s voluntary appearance was the equivalent of, or a waiver of, service of a subpoena. For some purposes that would be true. But section 406 is a most drastic statute mandating incarceration of indefinite length for refusals to answer questions (see
 
 People ex rel. Valenti
 
 v.
 
 McCloskey,
 
 6 N Y 2d 390;
 
 Matter of Commissioner of Investigation
 
 v.
 
 Lombardozzi,
 
 5 N Y 2d 1026). Such statutes are always strictly construed. ■ In
 
 Matter of Spector
 
 v.
 
 Allen
 
 (281 N. Y. 251), this court reversed a contempt conviction for lack of a proper subpoena duces tecum where a witness had been served with such a subpoena listing certain documents and orally directed by the Grand Jury foreman to bring in another paper, which order he disobeyed. Our language in
 
 Matter of Spector
 
 v.
 
 Allen (supra,
 
 p. 260) is applicable here: “To protect the liberty of the individual from possible abuse of power, punishment for contempt is hedged about with restrictions and subject to regulations imposed by the Legislature. Disobedience only
 
 *220
 
 of mandates of the court given in accordance with law are subject to such punishment.” It appears that in the present case this lack of a subpoena was not raised by appellant in the courts below but, being jurisdictional and conclusive, it may be acted on by us especially since the omission was not one which could have been supplied if attention had been called to it below (see
 
 Persky
 
 v.
 
 Bank of America Nat. Assn.,
 
 261 N. Y. 212; Cohen and Karger, Powers of the New York Court of Appeals, § 161).
 

 At the Appellate Division, two of the Justices dissented on quite a different ground. They thought that materiality of the questions was negatived by the lapse of two and a half years from the time appellant first gave his information to the Commissioner until the time of this questioning. However, that dissent was on a question of fact. We could not hold on this record that the questions were as matter of law immaterial.
 

 The order should be reversed and the proceeding dismissed, with costs in all courts.
 

 Judges Dye, Fuld, Froessel, Van Voorhis, Burke and Foster concur.
 

 Order reversed, etc.