OPINION OF THE COURT
Jasen, J.
On this appeal we direct our attention to the circumstances under which an attorney may be compelled on pain of contempt to disclose the address of his client notwithstanding a claim that such information was the subject of a privileged communication.
The tangled factual web which clothes this issue removing it from the abstract is drawn from a lengthy and heated proceeding in which respondents, the natural parents of Jacqueline F., have since 1974 unsuccessfully sought to obtain physical custody of their child. At the root of respondents’ struggle lies their voluntary placement of Jacqueline with her paternal aunt shortly after her birth in 1971 because of an illness suffered by the child’s mother. Upon the latter’s recovery, respondents sought the return of their child, but were denied this request by Jacqueline’s aunt. Thwarted in their efforts to obtain a voluntary return of Jacqueline, respondents commenced a proceeding in Family Court in 1975 for a writ of habeas corpus. Unbeknownst to respondents, however, the child’s aunt had obtained letters of guardianship over the child from the Surrogate’s Court. On the basis of these letters, appellant, an attorney representing the aunt, successfully moved to dismiss the petition on the ground that the Surrogate’s Court had exclusive jurisdiction over the matter.
Thereafter, respondents commenced a proceeding in the Surrogate’s Court to revoke the letters of guardianship. Although respondents’ first application was denied,[1] the letters of guardianship were revoked on July 1, 1977, and Jacque *218 line’s aunt directed to deliver custody of the child to respondents. However, the order of the Surrogate’s Court was stayed by the Appellate Division pending an appeal to that court. On July 19, while the stay remained in effect, Jacqueline’s aunt disconnected her telephone, vacated her home and departed with the child to Puerto Rico, leaving no forwarding address. Upon respondents’ discovery of this development in the course of attempting to exercise court-ordered visitation rights, they moved to vacate the stay. This motion was denied when appellant, appearing for the child’s aunt, maintained that the latter had gone to Puerto Rico only for a vacation.
On November 25, 1977, the Appellate Division (59 AD2d 1064) unanimously affirmed the order of the Surrogate, resulting in the expiration of the stay granted pending appeal. A motion for leave to appeal to this court was denied on December 19. On the same day respondents commenced the instant proceeding in the Surrogate’s Court by order to show cause to hold Jacqueline’s aunt in contempt and to compel appellant to disclose her whereabouts. Although the court declined to hold the child’s aunt in contempt finding service of process improper, it did order appellant to disclose his client’s whereabouts. On appeal taken by appellant, the Appellate Division unanimously affirmed. We granted leave to appeal and a stay pending our determination. There should be an affirmance.
Since the reign of Elizabeth I, the law has as a matter of policy encouraged full disclosure between attorney and client. (See, generally, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2290 [hereinafter Wigmore]; Richardson, Evidence [10th ed], § 410.) It has long been thought that persons in need of professional advice should not approach an attorney and disclose their problems in a manner tailored by a "fear that such facts will be made public to their disgrace or detriment by their attorney.” (Hurlburt v Hurlburt, 128 NY 420, 424.) Although fostered with an eye toward effectuation of a more orderly administration of justice through frank revelation of pertinent information (see People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, 717, affd 242 App Div 611), the attorney-client privilege (CPLR 4503),[2] like *219 all privileges, operates as an exception to the general requirement that all persons give testimony upon facts within their personal knowledge inquired of in a court of law. (See Matter of Horowitz, 482 F2d 72, 81, cert den 414 US 867, reh den 414 US 1052; 8 Wigmore, § 2285.) As such an exception, and notwithstanding its desirable purpose, the attorney-client privilege constitutes an "obstacle” to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose. (See Matter of Field, 408 F Supp 1169, 1173; Matter of Stolar, 397 F Supp 520, 524; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.19, p 45-148; 8 Wigmore, § 2291, at p 554.)
Looked at in this light, the question posed for resolution on this appeal is whether under the present circumstances the address of appellant’s client should be viewed as falling within the protective cloak of the attorney-client privilege. Only those communications made in confidence to an attorney for the purpose of seeking professional advice are afforded the stature of privileged communications. For this reason, it has been generally stated that inasmuch as a client’s identity is not relevant to advice proffered by an attorney, such communication is not privileged. (See Matter of Kaplan [Blumenfeld], 8 NY2d 214, 218; People ex rel. Vogelstein v Warden, 150 Misc, at p 719, supra; Fisch, New York Evidence, § 521; Disclosure of Name, Identity, Address, Occupation or Business of Client as Violation of Attorney-Client Privilege, Ann., 16 ALR3d 1047, 1051.) Justification for the same result has also been predicated upon the theory that the identity of a client must be disclosed to ensure that there exists an attorney-client relationship during the course of which privileged communications may be made. (See People ex rel. Vogelstein v Warden, 150 Misc, at p 718, supra.)
In discussing whether the attorney-client privilege insulates *220 a client’s identity from disclosure, we have stated on a previous occasion that notwithstanding opinion to the contrary the rule in New York is not so broad as to state categorically that the privilege never attaches to a client’s identity. (Matter of Kaplan [Blumenfeld], 8 NY2d, at p 218, supra.) We recognized as the basic principle only that inasmuch as every litigant has a right to know his opponent, a client’s identity must be disclosed where the question of identity arises during the course of litigation. (Id., at p 219; see, e.g., 99 Plaintiffs v Vanderbilt, 1 Abb Prac 193.) Thus, absent other circumstances, an attorney cannot be compelled to reveal a client’s identity where the latter is not a party to a pending litigation. (See, e.g., Matter of Shawmut Min. Co., 94 App Div 156; Neugass v Terminal Cab Corp., 139 Misc 699.) Of course, notwithstanding the absence of a pending litigation to which an attorney’s client is a party, disclosure may also be compelled where an "attorney’s assertion of the privilege is a cover for co-operation in wrongdoing.” (Matter of Kaplan [Blumenfeld], 8 NY2d, at p 219, supra; compare id. with People ex rel. Vogelstein v Warden, 150 Misc 714, supra; see, also, Banco Frances e Brasileiro S. A. v Doe, 36 NY2d 592, cert den 423 US 867.)
In a similar vein, any party may during the course of pending litigation serve a demand upon another party to set forth that party’s address. (CPLR 3118.) Prior to the advent of the statutory authority for this relief, the common law similarly provided that an attorney could be ordered to disclose his or her client’s address during the pendency of an action to which the client was a party. (Markevich v Royal Ins. Co., 162 App Div 640; Richards v Richards, 64 Misc 285, affd 143 App Div 906; O’Connor v O’Connor, 62 Misc 53.) However, once the litigation had been terminated, a judgment rendered and the appellate process exhausted, an attorney’s lips were considered forever sealed. As was stated in Matter of Trainor (146 App Div 117, 120), "wherever the court has directed an attorney to disclose the address of his client it has been in the very action brought by his client during its pendency, while the relation of attorney and client still existed, and because of facts relating to that action which rendered the disclosure necessary, in the interest of justice, to protect the rights of the adverse party to the action. Furthermore, when the relation of attorney and client has ceased, the seal of confidence imposed by the original relation continues, and the attorney cannot *221 then be compelled to disclose his late client’s address, even it be to enable the defendant to pursue him aggressively by new proceedings founded on the judgment.” (See Hyman v Corgil Realty Co., 164 App Div 140; Levy v Coy, Hunt & Co., 64 Misc 39; Walton v Fairchild, 4 NYS 552.)
In the present case, the underlying proceeding during which appellant represented Jacqueline’s aunt terminated on December 19, 1977, when this court denied appellant’s client leave to appeal from the order of the Appellate Division affirming the Surrogate’s revocation of letters of guardianship. Although respondents were aware of the departure of appellant’s client to Puerto Rico prior to the decision of the Appellate Division, at no time did they move during the pendency of the appeal to compel disclosure of her new address. Inasmuch as respondents did not take advantage of this statutory avenue for disclosure of the desired information, we must decide whether an attorney may be compelled to disclose his client’s address in a subsequent, collateral proceeding by determining whether, under the instant facts, disclosure of this information would be inconsistent with the purpose of appellant’s representation. (Banco Brasileiro v Doe, 36 NY2d 592, 599, supra.)
In our view, the fact that respondents could have obtained the address of appellant’s client during the pendency of the underlying proceeding does not ipso facto mean that appellant may at this juncture be compelled to disclose this information. As indicated previously, the case law upon which CPLR 3118 would appear to be based did not hold that a client’s address is never privileged inasmuch as it is not evidentiary matter but, to the contrary, that although such information is privileged it must be disclosed in the course of a pending action where disclosure is necessary for the proper administration of justice. Similarly, we have only recently cautioned that a client’s identity, also nonevidentiary information, may be privileged where disclosure might be inappropriate because inconsistent with the trust and duty assumed by an attorney. (Id.) Thus, where there exists a lawful purpose for confidential communication between attorney and client (see, e.g., Matter of Kaplan [Blumenfeld], 8 NY2d 214, supra), even the client’s identity may be privileged. For this reason, we do not find CPLR 3118, authorizing a party’s demand of another party’s address during the pendency of an action, dispositive of the question before us.
*222 In the determination whether a communication by a client to an attorney should be afforded the cloak of. privilege, " 'much ought to depend on the circumstances of each case’ (Matter of Kaplan [Blumenfeld], 8 NY2d 214, 219, supra, quoting 8 Wigmore, Evidence [5th ed], § 2313, p 609.) Nowhere is this principle better demonstrated than in the present case, involving the welfare of a young child caught in an intrafamilial legal battle in which the victor stands to gain an uncommon reward — custody of a child. The ordeal suffered by a child during a custody proceeding is unfortunate but often necessary. It is, however, quite another matter to put a child through such an ordeal only to permit an unsuccessful litigant to frustrate the court’s judgment rendered in the best interests of the child. (Cf. Martin v Martin, 45 NY2d 739; Matter of Nehra v Uhlar, 43 NY2d 242; Entwistle v Entwistle, 61 AD2d 380.) Given the vital interest of the State as parens patriae, deliberate attempts to avoid a court mandate concerning custody of a child cannot be permitted where, as in this case, a potential vehicle for the enforcement of the court’s judgment lies at hand. (See Falkenhainer v Falkenhainer, 198 Misc 29; cf. Tierney v Flower, 32 AD2d 392; Burton v Darnley, 21 LTR [ns] 292, 8 Equity Cases [LR 1869], 577; Ramsbotham v Senior, 21 LTR [ns] 293, 8 Equity Cases [LR 1869], 575.) Where a calculated intent to frustrate a court mandate exists on the part of a client under the circumstances of this case, it matters little whether his or her attorney acted for a legitimate purpose, inasmuch as a finding of a "conspiracy” is not necessary to defeat the privilege. (See Clark v United States, 289 US 1, 15; Richardson, Evidence [10th ed], § 417.)
Of course to be distinguished from the present case are those situations in which a communication by a client to an attorney is made with the expectation that this information will be kept confidential for a legitimate purpose. For example, occasions in domestic relations matters certainly exist in which a client may legitimately fear reprisals by his or her spouse and, therefore, request of an attorney that an address remain confidential. (See Taylor v Taylor, 45 Ill App 3d 352; Waldmann v Waldmann, 48 Ohio St 2d 176; cf. Matter of Kaplan [Blumenfeld], 8 NY2d 214, supra.) Unlike justification provided by a fear of reprisals, appellant’s client would appear to have kept secret her address for one purpose only: to thwart the mandate of the court’s judgment awarding respondents custody of Jacqueline. (Cf. Richards v Richards, 64 Misc *223 285, affd 143 App Div 906, supra; Dike v Dike, 75 Wn 2d 1; Jafarian-Kerman v Jafarian-Kerman, 424 SW2d 333 [Mo].) Appellant’s client cannot have her cake and eat it too by taking advantage of the appellate process in the hope of a reversal while at the same time remaining in hiding with the expectation that should she lose her appeal she can preclude enforcement of the mandate of the court. Under these circumstances the attorney-client privilege, which exists to foster "lawful and honest purposes” (Coveney v Tannahill, 1 Hill 33, 36) must yield to the best interests of the child. (Cf. People ex rel. Chitty v Fitzgerald, 40 Misc 2d 966.)
Accordingly, the order of the Appellate Division should be affirmed, without costs.

. The prior application was denied without prejudice to renewal of the application at a future date when the stability of respondents’ family life could be more clearly demonstrated.

. "(a) Confidential communication privileged; non-judicial proceedings. Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional *219 employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof. The relationship of an attorney and client shall exist between a professional service corporation organized under article fifteen of the business corporation law to practice as an attorney and counselor-at-law and the clients to whom it renders legal services.”