[617 NYS2d 484]

In the Matter of GRACE D'ALESSIO, as Administratrix of the Estate of VINCENT FIORITO, Deceased, Respondent, v MICHAEL GILBERG, Appellant.

Second Department, October 11, 1994

### APPEARANCES OF COUNSEL

*Gilberg & Gilberg,* Mount Vernon *(Michael Gilberg* on the brief), for appellant.

*Howard Rudnick,* Hempstead, for respondent.

*Gerald B. Lefcourt, P. C.,* New York City *(Joshua L. Dratel* of counsel), for National Association of Criminal Defense Lawyers and another, *amici curiae.*

### OPINION OF THE COURT

LAWRENCE, J. P.

The issue to be decided in this case is whether an attorney can be compelled to reveal the name of an individual who consulted him regarding that individual's possible past commission of a crime. We conclude that under the circumstances of this case, where the crime, if any, has already been committed, there is no possibility of further criminal acts occurring if the individual is not identified, and the disclosure sought would expose the client to possible criminal prosecution, that the client's name is privileged information that the attorney cannot be compelled to reveal.

On the evening of December 2, 1990, Vincent Fiorito sustained critical injuries while walking in the Town of Mamaroneck, the apparent victim of a hit-and-run driver. There were no known witnesses to the incident. The following month Fiorito, who never rose from the comatose state in which he was discovered, died of the injuries he sustained. Fiorito's insurer initially indicated an unwillingness to provide uninsured motorist coverage, asserting that the driver of the vehicle that allegedly struck Fiorito was not unknown. The insurer based its disclaimer upon a newspaper article wherein it was asserted that the driver had revealed himself to an attorney.

The petitioner subsequently learned that the respondent attorney may have been contacted by an individual who may have driven the vehicle which struck the deceased. Thus she made this application pursuant to CPLR 3102 (c) for the preaction depositions of the attorney and the former Mamaroneck Police Commissioner, with whom the attorney allegedly

spoke, in an effort to ascertain that individual's identity in order to commence a civil action.

By decision and order dated September 24, 1992, the Supreme Court granted the petitioner's motion and directed the attorney to appear for an examination before trial. (155 Misc 2d 518.) The court concluded, in pertinent part, that the privilege was not applicable under the circumstances because the information sought to be revealed was the client's identity and because the purpose of the privilege would not be served by shielding an individual from the possibility of civil and criminal liability. The attorney appeals, and we reverse.

In New York State the attorney-client privilege is a creature of statute, and prohibits an attorney from disclosing a confidential communication had with his client in the course of professional employment unless the client waives the privilege (see, CPLR 4503 [a]). Its purpose is "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment" (Matter of Priest v Hennessy, 51 NY2d 62, 67-68). So strong is the State's regard for the confidentiality of attorney-client communications that an attorney exposes himself to possible disciplinary charges if he fails to keep confidential a communication from his client without the client's consent (see, Code of Professional Responsibility DR 4-101 [22 NYCRR 1200.19]). However, since the privilege serves to shield evidence from discovery, and thereby potentially thwart the fact-finding process, it is to be strictly construed in keeping with its purpose (see, Vingelli v United States, 992 F2d 449, 452; In re Shargel, 742 F2d 61).

At bar, the information that the petitioner seeks is the identity of the individual who apparently consulted the attorney, seeking legal advice regarding his alleged involvement in a fatal motor vehicle accident. That information, according to the attorney, is privileged. "In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a 'confidential communication' made to the attorney for the purpose of obtaining legal advice or services" (Matter of Priest v Hennessy, 51 NY2d 62, 69, supra). Thus it has generally been held that the client's name, in and of itself, is not privileged, as it is considered to be neither confidential nor a communication (see, In re Osterhoudt, 722 F2d 591). However, such "nonevidentiary information" may qualify as privileged "where disclosure might be

inappropriate because inconsistent with the trust and duty assumed by an attorney" *(Matter of Jacqueline F.,* 47 NY2d 215, 221; *see, In re Shargel,* 742 F2d 61, *supra).* This issue is one that must be resolved on a case-by-case basis *(see, In re Shargel, supra; Baird v Koerner,* 279 F2d 623, 630). Under the circumstances of this case we conclude that the client's identity does constitute a confidential communication, and therefore cannot be revealed by the attorney without the client's consent.

Initially we note that, although it clearly has been contemplated, the petitioner has not commenced a civil action against the individual whose identity she seeks to ascertain. Thus we are not faced with the situation where a litigant is seeking to learn the identity of his adversary *(see, Matter of Jacqueline F.,* 47 NY2d 215, 220, *supra; Matter of Kaplan [Blumenfeld],* 8 NY2d 214, 219). Nor are we faced with the situation where an attorney is being asked to divulge information for the purpose of preventing a future crime, for here the client's crime, if there be one, has already been completed *(see, People v Belge,* 83 Misc 2d 186, *affd* 50 AD2d 1088, *affd* 41 NY2d 60; *cf., People ex rel. Vogelstein v Warden of County Jail,* 150 Misc 714, *affd* 242 App Div 611; *Matter of Grand Jury of County of Suffolk,* 117 Misc 2d 197; *Matter of Doe,* 101 Misc 2d 388; *Anderson v State,* 297 So 2d 871 [Fla]).

The case of *Matter of Grand Jury Proceeding (Cherney)* (898 F2d 565), while not binding upon us, is instructive. There attorney Cherney was subpoenaed by the Grand Jury to reveal the name of the individual who paid legal fees for a known individual that Cherney was defending in a narcotics conspiracy trial. Cherney refused to reveal the fee payer's identity, asserting that it constituted a confidential communication which was privileged because the payer was also allegedly involved in the drug operation and had consulted the attorney for legal advice in connection with that involvement. The Seventh Circuit agreed. "In the situation at bar, the fee payer sought legal advice concerning his involvement in the drug conspiracy. Disclosure of the fee payer's identity would necessarily reveal the client's involvement in that crime and thus reveal his motive for seeking legal advice in the first place. * * * In effect, therefore, disclosure of the client's identity would expose the substance of a confidential communication between the attorney and the client" *(Matter of Grand Jury Proceeding [Cherney], supra,* at 568).

Similarly, at bar the client consulted the attorney in con-

nection with his or her involvement in a fatal hit-and-run accident. Disclosure of his identity would reveal his possible involvement in a crime in connection with that accident, which is the precise situation for which he sought legal advice. Under these circumstances his or her identity constitutes a confidential communication, the disclosure of which is prohibited by the dictates of the attorney-client privilege.

We note that the petitioner does not, and, indeed, in our opinion cannot, assert that under the circumstances of this case strong public policy dictates that the disclosure of this confidential communication is warranted even though the technical requirements of the attorney-client privilege have been satisfied *(see, Matter of Jacqueline F.,* 47 NY2d 215, *supra* [the attorney-client privilege was held to yield to the best interests of the child in a situation where the confidential communication sought would assist the authorities in determining the whereabouts of a child who had been taken by her aunt, the client whose whereabouts were sought to be revealed, from her parents]; *see generally, Matter of Priest v Hennessy,* 51 NY2d 62, 69, *supra).*

"To be sure the exercise of the privilege may at times result in concealing the truth and in allowing the guilty to escape. That is an evil, however, which is considered to be outweighed by the benefit which results to the administration of justice generally" *(People ex rel. Vogelstein v Warden of County Jail,* 150 Misc, at 717, *supra).* We conclude that the identity of the individual who allegedly was driving the vehicle which struck and killed Vincent Fiorito is privileged insofar as it was communicated confidentially to that individual's attorney, and therefore the Supreme Court erred in directing that attorney to reveal that information. Accordingly, the order is reversed insofar as appealed from, on the law, and the preaction discovery application is denied.

RITTER, HART and KRAUSMAN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the preaction discovery application is denied.